IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RICHARD J. LEES,

        Plaintiff,

                             Case No. C2-06-984
vs.                         Judge Edmund A. Sargus, Jr.
                             Magistrate Judge Mark R. Abel

THERMO ELECTRON CORP.,
        et al.,

        Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of the Motion for Summary Judgment filed by Defendants, Thermo Fisher Scientific Inc., Robert Graessle, John Taulien and Jeffrey Schneider. For the reasons that follow, Defendants' Motion is granted in part and denied in part.

### I.

Certain facts are not in dispute. Plaintiff, Richard J. Lees, worked for twenty-six (26) years as a sales representative with Thermo Fisher Scientific, Inc., formerly known as Forma Scientific and Thermo Electron Group ("Thermo"). Thermo manufactures high-end analytical instruments and equipment for use in clinical and industrial laboratories in conjunction with research, analysis and diagnostics. On October 2, 2006, Thermo terminated Plaintiff's employment. Plaintiff was sixty-one (61) years old at the time.

On May 6, 2005, Thermo acquired a competitor in the laboratory equipment market, Kendro Laboratory Products. As a result of the acquisition, Thermo doubled both the products

it offered and the size of its sales force. Thermo reconfigured its sales territories to accommodate the larger sales force.

Thermo created a sales integration team to oversee the assimilation process. This team, consisting of Jeff Schneider (age 54), Dan Biggs (age 48), Robert Graessle (age 57) and David Turner (age 38), inputted Kendro and Thermo's sales data from January 2004 through May 2005 into a sales territory mapping software program called AlignStar. The integration team configured the territories for direct salespersons such as Plaintiff, with annual productivity goals of $1.9 to $2.4 million combined sales for Forma and Kendro products. The territory alignments were finalized in late July to early August 2005.

According to Plaintiff, on Monday August 15, 2005, Plaintiff had a telephone conference call with his manager, John Taulien, Great Lakes Sales Manager for Thermo. Taulien had sent Plaintiff a map and account list regarding his new territory which was to become effective September 1, 2005. Plaintiff's new territory was defined as Columbus and Eastern Ohio together with Huntington, Charleston and Parkersburg, West Virginia.[1] After the realignment, a portion of Plaintiff's existing territory, Cincinnati, Dayton and and Lexington, Kentucky was divided between Kent Rine and David Catalano, both of whom had been with the company less than two years and were under the age of 40. Plaintiff retained The Ohio State University in his territory, a highly-funded research institution and Thermo's largest customer in the State of Ohio. Plaintiff's territory also included Children's Hospital, Battelle Institute, Abbott Laboratories, all three in

---

[1]      On August 16, 2005, during a telephone call, Taulien told Plaintiff that all of West Virginia would be added to his territory. Plaintiff still perceived an unfairness in the distribution and consistently expressed his concerns. According to Plaintiff, he received West Virginia, a declining market with only one major account in exchange for the substantially more productive territories of Cincinnati, Dayton and Lexington, which were given to younger salesmen.

Columbus, together with Mylan Pharmaceuticals, West Virginia University and other research institutions.[2] Plaintiff expressed his dissatisfaction with the new territory and his concerns that he would be unable to meet his sales quotas.

Plaintiff contends that prior to this reconfiguration of the sales territories in 2005, Plaintiff received 20 sales awards and was at or above his sales quota in 19 of his 25 years of service. Plaintiff never finished below 90% of his annual sales quota. Through September 2005, when the realignment occurred, Plaintiff had achieved 93% of his sales quota.

Following the redistribution of territories, Thermo set the cutoff for sales credit from the previous territories for December 1, 2005. On December 6, 2005, Thermo received an order valued at $52,000 from The Rogosin Institute in Xenia, Ohio. Plaintiff had done all of the work on this order, but because it did not book prior to December 1, he received no credit. Plaintiff asked his supervisors to credit this order to him, and his previous customer telephoned Taulien to request that Plaintiff receive the credit. Nonetheless, Taulien would not give Plaintiff the credit because it was past the December 1 cut-off date. Instead, the younger salesperson, Catalano, who had assumed the accounts in Xenia, Ohio following the realignment, received 100% of the credit for the order.

By contrast, according to Plaintiff, the University of Pittsburgh placed an order with Thermo during the second week of December valued at $174,000. Although the University placed

---

[2]     Effective April 1, 2006, Thermo reassigned Plaintiff to his former territory in Lexington, Kentucky. The parties dispute the reason for this reassignment, and the record provides competing explanations, including the one offered officially to the EEOC by Thermo that the entire State of Kentucky was too large for one sales manager to cover completely (Pl's Mem. in Opp., Exh. U), versus an internal e-mail messages between Plaintiff's supervisors that seem to acknowledge that Plaintiff's original territory assignment would not produce significant growth. (Pl's Mem. in Opp., Exh. X.)

-3-

the order past the December 1 cutoff date, Catalano received 100% credit for the sale, despite the territory realignment. Plaintiff spoke with his supervisors, both Taulien and Jeff Schneider, Director of Sales, about the unfairness of this distribution, who merely said it was a different situation, but, according to Plaintiff, offered no other explanation.

Plaintiff contends that he complained to his supervisor Taulien in an e-mail regarding the fourth quarter reconciliation of accounts and the fact that he viewed the territory realignment an inequitable. (Pl's Mem. in Opp., Exh. F.) Taulien responded by forwarding the email to his supervisor, Jeff Schneider, inquiring, "Is early retirement an option here?" Schneider responded to Taulien and copied Lisa Dubey, Senior Human Resources Manager, on an e-mail:

> Lisa, Dick Lees is an issue but is 1-2 years from retirement. Have we ever created an enhanced retirement package to encourage a person to retire early? Don't want to set a precedence here but the odds of Dick 'changing' is low and he won't accept a PIP well, though we can try.

(*Id.*). Taulien's response to Schneider's e-mail stated in part that he agreed, and "the responses that I got from the blitz he just attended with Dennis, Kim and Rob are along the lines of 'Dick is set in his ways and is an old timer.' . . ." (*Id.*)[3]

---

[3]     Defendants referenced early retirement options for Plaintiff again in e-mails dated January 21, 2006 regarding candidates for employment in the Chicago, Illinois area. Taulien suggested a scenario to Schneider that involved getting Lees to retire so that hiring of a new candidate would not be a problem, and redistributing Plaintiff's territory among the remaining employees. Taulien describes his proposal as follows: "This is where we put in the dagger. . . . If we can get Dick Lees to retire and [another employee] to go back to selling . . ., then we have this licked." (Pl's Mem. in Opp., Exh. G.)

A few days later, however, on January 24, 2006, Taulien indicated in an email to Schneider that he had been giving a great deal of thought to Plaintiff's situation, and presented an "option that will make you wonder if I lost my mind." Taulien proposed that a new position be created for Plaintiff, that would take advantage of "Dick's great knowledge of the product lines;" "[r]etain his 25 years of knowledge and contacts that can be perpetuated throughout the team;" and "[p]ut him in a situation that keeps him in his comfort zone because with 2 years till [sic] retirement we will be swimming upstream trying to change such a person. . . ." Taulien concluded that "[i]n lieu of early retirement this may be a better option for

-4-

Plaintiff also adduced evidence that Defendants made age derogatory comments about him during this business transition. On Monday October 3, 2005, Taulien forwarded an e-mail to 17 employees in Plaintiff's region and Jeff Schneider. The e-mail contained an attachment and picture of Plaintiff with a business associate at the Ohio State University. The caption on the picture said, "Who says you can't teach an old dog new tricks!" (Pl's Mem. in Opp., Exh. D.) In an e-mail dated October 4, 2005 Plaintiff responded to an e-mail from a co-worker who asked "Is John trying to be funny?" with the statement "Who knows? If he was, the humor escapes me, but the words 'old dog' did not." (Pl's Mem. in Opp., Exh. E.)[4]

Paul Sikora, who was 50 years old at the time, also was a sales representative reporting to Taulien. Sikora testified that he was at lunch with Taulien in May of 2005 when Taulien told Sikora that he "does not like the idea that he has the oldest sales force in the country." (Sikora Dep., at 28.) Taulien had put Sikora on a performance improvement plan and required that he do special reports that no one else in the region was required to complete. (*Id*. at 27.)

According to Defendants, Plaintiff refused to accept his new territory and ignored the requirement to do business in West Virginia. Defendants contend that Plaintiff expressed little interest in selling the new line of Kendro products and chose to sell, almost exclusively, products from Thermo with which he was more familiar.

---

Thermo." (Pl's Mem. in Opp., Exh. M.)

[4]     Plaintiff also relies on evidence that, in 2003, Defendant Graessle referred to Plaintiff as a "dinosaur." This comment is the subject of a later filed Motion *in Limine* as being irrelevant, because Graessle had no role in the decision to terminate Plaintiff, and because it is too remote in time. Because the Court determines, irrespective of this comment, that material issues of fact preclude summary judgment, the Court need not reach a conclusion at this juncture as to the admissibility of Graessle's alleged remark.

Plaintiff achieved only 58% of his sales goal for fourth quarter 2005 and met only 82% of his sales goal for calendar year 2005. Plaintiff's performance improved during first quarter of 2006. Of Plaintiff's sales in the first quarter 2006, however, only 5% were Kendro products.

Plaintiff received a rating of "requires improvement" on his 2005 performance appraisal, known at Thermo as a Performance Management Development ("PMD").[5] On April 6, 2006 Thermo then placed Plaintiff on a Performance Improvement Plan ("PIP"). Taulien discussed the 2005 PMD and the first PIP with Plaintiff on April 6, 2006 during a lunch meeting, and explained that if Plaintiff did not improve, his employment could be terminated. The PIP was to be effective for 90 days. Plaintiff refused to sign both documents.

Plaintiff tape-recorded his meeting with Taulien on April 6, 2006, when Taulien discussed his 2005 PMD and gave him his first PIP.[6] According to a transcript prepared by Plaintiff, the following statements were made near the end of an hour-long conversation:

| | |
|---|---|
| Plaintiff: | What happens if I don't hit all these criteria here, John? |
| Taulien: | The goal here Dick is for you to meet all the criteria. |
| Plaintiff: | What happens if per chance I don't for some reason or I hit 8 out of 10 or whatever? |
| Taulien: | My goal here Dick is not to get rid of you if that's what you think. |
| Plaintiff: | It sure seems like it John for whatever reason? |
| Taulien: | You can take it that way; you can take it whatever way you want to |

---

[5]     Plaintiff apparently received his PMD earlier, to which he responded with his comments on April 1, 2006 to Taulien, and copied, *inter alia*, Schneider. (Pl's Mem. in Opp., Exh. H.) In reaction to Plaintiff's comments, Schneider sent an e-mail to Dubey that began "Realistically, I assume we're doing this for documentation purposes." (*Id.*) The e-mail concluded by stating "If there is any chance of 'changing our mind' let me know." (*Id.*) Schneider sent a second e-mail to Dubey a few minutes later stating "[j]ust for clarification, I don't think we should change our mind . . . Dick lives in the past . . ." (*Id.*)

[6]     Plaintiff tape recorded several other meetings and calls beginning in December, 2005. (Lees Dep., at 236.) In total, Plaintiff recorded 15 cassette tapes of conversations. Thermo contends that some of these recorded conversations related to its confidential and proprietary information.

|  | take it. I want; I want you to get on board with what we're doing at Thermo here in the new generation. |
|---|---|
| Plaintiff: | In the new generation? |
| Taulien: | Yes, in the new generation. |
| Plaintiff: | As opposed to? |
| Taulien: | You do things the old fashioned way. I don't want you to set up incubators. I want service to be setting up incubators. You're wasting your time setting up incubators. |
| Plaintiff: | Wow. Seriously? |
| Taulien: | I don't want you to service incubators; I want you to be spending your time doing shows, generating leads, not setting up incubators. |

(Taulien Dep. II, Exh. 36.)[7]

Following this performance review and PIP, on May 5, 2006, the Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). He claimed that Thermo discriminated against him on the basis of his age by adjusting his territory so that his lucrative accounts and locations were given to younger sales representatives, and by giving him a poor performance evaluation and placing him on the PIP. Schneider was aware of the charge. Plaintiff's direct supervisor, Taulien, however, was not aware Plaintiff had filed the administrative claim of age discrimination.

Although Plaintiff made improvement, Taulien placed Plaintiff on a second performance improvement plan (second PIP) when the first PIP expired on July 10, 2006. Defendants asserted that a second PIP was necessary because Plaintiff had not met some of the key objectives of his first PIP.[8] The second PIP was to last for 49 days.

_____

[7]     Taulien first denied that he had used statements such as "new generation" and "old fashioned" in the conversation with Plaintiff. (Pl's Mem. in Opp., Exh. K.) Defendants now maintain that Taulien's use of the words "new generation" and "old-fashioned" referred to the product orientation and processes of the new combined Company, not to Plaintiff's age. (Taulien Dep., at pp. 117-123.)

[8]     Defendants assert that Schneider determined that Plaintiff should be placed on the second PIP on July 14, 2006, notwithstanding email messages from Taulien to Schneider and Human

In this same time period, Thermo responded to Plaintiff's EEOC regarding Plaintiff's administrative charge of age discrimination in the company's position statement dated July 13, 2006. In it, Thermo reported that it had removed Plaintiff from the performance improvement plan when it expired on July 10, 2006, although the record in this case demonstrates a new improvement plan was implemented on the same day. (Pl's Mem. in Opp., Exh. U at ¶ 1.) Thermo did not indicate to the EEOC that at some point between July 11 and July 14, 2008, Schneider approved Taulien's recommendation for an extension of Plaintiff's PIP for an additional 49 days. (See Schneider Dep., at p. 308.)

On September 15, 2006, Schneider and Taulien reviewed with Plaintiff the results of the second PIP. On October 2, 2006, Schneider informed Plaintiff that his position was terminated because he failed to meet all of the requirements of his second PIP.[9]

Plaintiff filed a Complaint against his former employer, Thermo, and his individual supervisors, John Taulien, Robert Graessle and Jeff Schneider. In Count 1, Plaintiff claims Defendants discriminated against him on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(d) and Ohio Rev. Code §§ 4112.02, 4112.99 (Am. Compl. ¶17) and retaliated against him for filing a charge with the EEOC. (Am. Compl. ¶ 14.) In Count 2, Plaintiff claims the limitations on noneconomic and punitive damages in Ohio

---

Resources Manager, Lisa Dubey, beginning on July 9, 2006, advising that he (Taulien) intended to extend the PIP. (Pl's Mem. in Opp., Exh. V.) Schneider testified that he was ultimately responsible for all actions relative to the PIPs in his group, and that Taulien and others merely provided him with recommendations.

[9]      Specifically Thermo contends that Plaintiff failed to conduct rotor clinics; failed to perform any cart days; refused to order high-speed internet service failed to sell a floor model centrifuge; and did not meet his sales quota, particularly with respect to Kendro products. (Schneider Dep., at 124.)

Rev. Code § 2315.18 violate the Ohio constitution. (Am. Compl. ¶ 19.) Defendants have moved for summary judgment on both Counts. Plaintiff did not respond in opposition to Plaintiff's Motion as it relates to Count 2.

## II.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (concluding that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). In responding to a motion

for summary judgment, however, the nonmoving party "may not rest upon its mere allegations .
. . but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R.
Civ. P. 56(e); *see Celotex*, 477 U.S. at 324. Furthermore, the existence of a mere scintilla of
evidence in support of the nonmoving party's position will not be sufficient; there must be
evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S.
at 251; *see Matsushita*, 475 U.S. at 587-88 (finding reliance upon mere allegations, conjecture,
or implausible inferences to be insufficient to survive summary judgment).

## III.

### A.  Age Discrimination

Plaintiff brings an employment discrimination suit under the ADEA, 29 U.S.C. § 623(a)
and Ohio Rev. Code § 4112.02, alleging that Defendant discriminated against him on account of
his age.[10] Under both the ADEA and Ohio Rev. Code § 4112.02, it is an unlawful discriminatory
practice for any employer to discriminate against an employee with respect to the terms of his or
her employment on the basis of age.

To survive summary judgment, Plaintiff must present either direct or circumstantial
evidence of age discrimination. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). An
employee may show age discrimination by direct evidence of discriminatory statements. In
evaluating direct evidence claims, the Court must consider: (1) whether a decision-maker or an
agent within the scope of his employment made the statement; (2) whether the statements related

---

[10]       Plaintiff's claims of discrimination and retaliation under the ADEA and Ohio Rev. Code
§ 4112.2 are analyzed under the same standards. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d
344, 357 (6th Cir. 1998)("[u]nder Ohio law, the elements and burden of proof in a state
age-discrimination claim parallel the ADEA analysis") (citations omitted). The Court, therefore, analyzes
these claims concurrently.

-10-

to the decision-making process; (3) whether the statements were more than merely vague, ambitious or isolated remarks; and, (4) whether they were made proximate in time to the act of termination. *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir. 1994).

To establish a *prima facie* case of age discrimination, a plaintiff must show that: (1) he or she is a member of the protected class, that is, he or she is at least forty years of age; (2) he or she was subjected to an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was treated differently from similarly situated employees outside the protected class, or he or she was replaced by a substantially younger employee. *Mitchell v. Vanderbilt University*, 389 F.3d 177, 181 (6th Cir. 2004)(referencing the four-part test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)). If such a showing is made, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory explanation for the discharge. Once that explanation is advanced, the burden of production returns to the Plaintiff to show that the reason offered by the employer was merely a pretext for discrimination. *Id.* At all times, however, the ultimate burden of persuasion remains upon the plaintiff. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

## 1.   **Direct Evidence**

To succeed on a "direct evidence" claim, a plaintiff must come forward with direct evidence that "an illegitimate criterion," in this case, age, "was a substantial factor" in the adverse employment action. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 276 (1989) (O'Connor, J., concurring). If such evidence is presented, the burden then shifts to "the employer to convince the trier of fact that it is more likely than not that the decision would have been the same absent consideration of the illegitimate factor." *Id.* Direct evidence "proves the existence of a fact

-11-

without requiring any inferences." *Blair v. Henry Filters, Inc.*, 505 F .3d 517, 523 (6th Cir. 2007) (internal citation omitted).

Plaintiff asserts that he has established age discrimination through direct evidence. He posits that he was treated differently based upon his age as evidenced by several references to his retirement and other age derogatory comments like "old timer" or "old fashioned" made by his direct supervisor, Taulien. Taulien placed Plaintiff on a performance improvement plan and, viewing the evidence in a light most favorably to Plaintiff, was involved in the decision to terminate Plaintiff's employment.

Plaintiff also relies on Taulien's statement in January 2006 when Taulien asked Schneider whether early retirement was an option for Plaintiff. Plaintiff cites to evidence that Schneider asked Dubey whether an enhanced retirement package had ever been created to "encourage a person to retire early," and indicated that Plaintiff was 1-2 years from retirement. Plaintiff also points out that, on January 21, 2006, Taulien outlined a business strategy and proposed staffing changes that depended on Plaintiff retiring out of the department. Plaintiff asserts that Taulien's comments, including one in which he stated that he did not like having the oldest sales force in the county, that Plaintiff used old-fashioned ways and could not get with the new generation, provide direct evidence that he was discriminated against on the basis of age. Defendants contend that Plaintiff has overstated the relevancy of these comments or otherwise has taken them out of context.

Defendants maintain that their discussions regarding retirement options for Plaintiff do not evidence discriminatory motive because "retirement" is not synonymous with "age." It is true that length of tenure, although oftentimes correlating empirically with age, is not synonymous with

-12-

age. *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993) ("Because age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age based.'"). Yet, here, Plaintiff essentially maintains that his supervisors were using retirement as a proxy to accomplish age discrimination. *See Allen v. Diebold*, 33 F.3d 674, 676 (6th Cir. 1994) ( "[T]he ADEA prohibits only actions actually motivated by age and does not constrain an employer who acts on the basis of other factors-pension status, seniority, wage rate-that are empirically correlated with age. Of course an employer may not use any of these factors as a proxy for age, but age itself must be the motivating factor behind the employment action in order to constitute an ADEA violation.")

The cases in which years of service have been distinguished from age are not similar to the case at bar. In this case, from the evidence produced by Plaintiff, the employer was not crafting an employment practice designed to consider length of employment, rather than age discrimination.

The direct evidence produced by Plaintiff is sufficient for a jury to consider whether the Plaintiff's age was considered in an unlawful manner as a motivating factor in the discharge. Here, Plaintiff has adduced evidence that his direct supervisor, Taulien, made or condoned ageist comments, such as "old timer," "old fashioned" and "old dog" in reference to Plaintiff. Schneider, upon the recommendation of Taulien, placed Plaintiff on two PIPs. Taulien developed a business-strategy that could only be implemented if Plaintiff was convinced to leave the company through retirement. Taulien's comments, if credited, including that he did not like having the oldest sales force in the county, that Plaintiff used old-fashioned ways and could not get with the

-13-

new generation, provide direct evidence for a jury to consider in evaluating whether Plaintiff was
discriminated against on the basis of age.

### 2. Indirect Evidence

Even if the Plaintiff did not submit direct evidence of age discrimination, he nonetheless
establishes a prima facie case under the *McDonnell-Douglas* analysis. Again, to establish a *prima*
*facie* case of discrimination based on age using circumstantial evidence, Plaintiff must prove that
(1) he is a member of the protected class, at least 40 years of age; (2) he was subjected to an
adverse employment action; (3) he was qualified for the position; and (4) he was treated differently
from similarly situated employees outside the protected class, or he was replaced by a substantially
younger employee. *Mitchell*, 389 F.3d at 181. The parties do not dispute that Plaintiff as over the
age of 40 at all times relative to this case and was a member of the protected class, or that he was
qualified for his job.[11]

As an initial matter, with respect to whether Plaintiff was subjected to an adverse
employment action, Defendants assert that the realignment of Plaintiff's sales territory and placing
him on performance improvement plans do not constitute adverse employment actions. They
maintain that only Plaintiff's termination of employment constitutes an adverse employment action.
The Court disagrees that realigning a sales territory and placing an employee on performance
improvement plans that ultimately serve as the basis for his or her termination may *never*

---

[11]       Defendants assert that Plaintiff was not replaced following his termination, because
Thermo redistributed Plaintiff's territory to existing sales representatives, and that an employee is not
"replaced" when work is redistributed among other existing employees performing related work.
Defendants cite *Barnes v. GenCorp Inc.*, 896 F.2d 1457 (6th Cir. 1990) in support of their claim that
Plaintiff was not replaced, and hence cannot establish a *prima facie* case. First, *Barnes* is
distinguishable, as it involved a reduction-in-force situation. Second, Defendants' argument presupposes
that the only adverse employment action Plaintiff suffered was his discharge.

constitute adverse employment actions. An adverse employment action is a "materially adverse change in the terms or conditions of . . . employment because of [the] employer's conduct." *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir.1996). "Reassignments without changes in salary, benefits, title, or work hours usually do not constitute adverse employment actions." *Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 539 (2002).

Here, Plaintiff claims that the territory realignment was accomplished to give substantially younger sales representatives his much more lucrative accounts, and that the change materially and adversely changed his income. A reasonable jury could conclude that this employment decision constituted an adverse employment action. Similarly, the case cited by Defendants in support of their position that placing Plaintiff on the PIP's did not impose an adverse action against him is not dispositive of the issue. *Agnew v. BASF Corp.*, 286 F.3d 307, 310-11 (6th Cir. 2002) did not hold, as Defendants assert, that performance improvement plans never, as a matter of law, rise to the level of an adverse employment action. Instead, the court in *Agnew* held that "criticism in performance reviews and institution of performance improvement plans, alone, do not constitute objectively intolerable conditions" for purposes of a constructive discharge claim. Here, in addition to receiving a less than desirable performance rating, the negative rating subjected Plaintiff to a program that jeopardized his job. Furthermore, Plaintiff has adduced evidence that the PIP was for documentation purposes only, and that his supervisors did not perceive much potential for improvement. The PMD and PIP, standing alone, are not the exclusive bases of Plaintiff's claims.

Defendants proffer as their legitimate, non-discriminatory reason for terminating Plaintiff that he did not meet all of the requirements of his PIP and, in particular, he refused to sell all of

-15-

his product line. Thus, Plaintiff must present evidence that would allow a jury to find Defendants' articulated reason for the adverse action to be unworthy of belief, and therefore a pretext for age discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993). The Court concludes that Plaintiff has produced sufficient evidence on this issue to raise a genuine issue of material fact regarding Defendants' motivation for terminating him.

To establish that Defendants' reason for the termination is unworthy of belief, Plaintiff may show that "(1) the proffered reasons had no basis in fact, (2) the proffered reasons did not actually motivate his demotion, or (3) they were insufficient to motivate discharge." *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). Here, a reasonable jury could believe that Plaintiff was terminated for failing to comply with all the terms of his performance improvement plan, and that Thermo's decision to discharge was based on a reasonable business judgment. In this case, however, Plaintiff has adduced sufficient contrary evidence to support the conclusion that this reason is a pretext for discrimination.

Plaintiff highlights, inter alia, the following evidence that could lead a jury to conclude that the business justification Thermo offers for Plaintiff's termination are pretextual:

- Despite over 26 years of sales experience, Taulien terminated him after only one visit to his territory, knowing that meeting his numbers in the realigned territory he had been given was a challenge;

- David Catalano's sales performance shows that he finished second quarter of 2006 at 65% of forecast for the quarter. He also finished fourth quarter 2006 at 56% of forecast for the quarter. He finished the year of 2006 at 83% of forecast for the year. (Thermo 4364.) Catalano was not put on a PIP, he was given an "at standard" review on his PMD, and he was not terminated. His age during 2006 was 34. (Lees Aff. at ¶47.);

- By the end of the continued PIP when Defendants decided to terminate Lees, he had built the highest pipeline for future business in the entire sales force in the

-16-

country. (See Exhibit Z; Taulien Dep. Ex. 29; Lees 239: Pipeline Size Ranking as of October 3, 2006.) (Lees Aff. at ¶34.)

The conflicting proof and the inferences that must be drawn from it raise genuine issues of material fact that preclude entry of summary judgment. Defendants' Motion is according **DENIED** as to Plaintiff's age discrimination claims.

## B.  Retaliation

Under the *McDonnell Douglas/Burdine* framework, Plaintiff has the initial burden of establishing a *prima facie* case of retaliation by showing that (1) he engaged in protected activity, (2) this exercise of his protected activity was known to defendant, (3) defendant thereafter took an employment action adverse to plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action. *Imwalle v. Reliance Med. Prods, Inc.*, 515 F.3d 531, 544 (6th Cir. 2008).   The burden then shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for its actions. *Id.* If the defendant satisfies this burden, the plaintiff must then demonstrate that the legitimate reason offered by the defendant was not its true reason, "but instead was a pretext designed to mask retaliation." *Id.*

Plaintiff alleges that Defendants took adverse action against him for filing a charge with the EEOC asserting age discrimination.  Thermo knew at the point that the EEOC forwarded the charge for comment and the company submitted a position statement dated July 13, 2006 that Plaintiff was engaging in protected activity.  After he filed the administrative charge, Plaintiff was notified that his PIP would continue, even though the company informed the EEOC that it was completed.  Shortly thereafter, Plaintiff was terminated.

"Temporal proximity alone, without additional evidence of a retaliatory animus, will not

-17-

suffice to support a finding of a casual connection." *Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir. 1999). Here, although Plaintiff relies on the fact that only five months passed between the filing of the EEOC charge and his termination, the record is replete with disputed issues regarding Defendants' motive. Again, in evaluating Plaintiff's rebuttal evidence, the Court reaches the same conclusions as it did with respect to his age discrimination claims, that when viewing the facts in the light most favorable to the Plaintiff, he has produced sufficient evidence for a reasonable jury to find that Defendant's explanation for terminating him was pretextual, and that he was instead terminated in retaliation for his claims of age discrimination. For these reasons, Defendants' Motion for Summary Judgment on Plaintiff's retaliation claims is **DENIED**.

## C.    Liability for Individual Defendants

Defendants assert that Defendants Taulien, Graessle and Schneider are not individually liable for age discrimination or retaliation against Plaintiff.[12] In *Genaro v. Central Transport, Inc.*, 84 Ohio St. 3d 293 (Ohio 1999), the Ohio Supreme Court held as follows:

> [W]e believe that the clear and unambiguous language of R.C. 4112.01(A)(1) and (A)(2), as well as the salutary anti-discrimination purposes of R.C. Chapter 4112, and this court's pronouncements involving workplace discrimination, all evidence that individual supervisors and managers are accountable for their own discriminatory conduct occurring in the workplace environment. . . .

*Id*. at 300. Liability for discrimination extends only to mangers who played a direct role in a discriminatory employment action. *Id.*; *Jones v. Kilbourne Med. Labs.*, 162 F. Supp.2d 813, 830 (S.D. Ohio 2000).

---

[12]    Plaintiff's claims of individual liability against Graessle, Taulien and Schneider are brought pursuant to Ohio Rev. Code Chapter 4112, and are not asserted under the federal ADEA.

### 1.) **Robert Graessle**

The record demonstrates Robert Graessle cannot be held individually liable for age discrimination or retaliation. While Graessle consulted in the initial discussions regarding territory realignments following the Kendro acquisition, Graessle was not involved in the final decision to affecting Plaintiff's sales territories. Likewise, Graessle had no involvement or knowledge Plaintiff received a "requires improvement" rating on his 2005 performance evaluation or that he was placed on either the first or second PIP. Indeed, Graessle had no knowledge that Plaintiff was terminated. He was not in the chain of command over Plaintiff and had no role in the management of the division in which Plaintiff worked. These undisputed facts demonstrate Graessle had no role in any adverse employment action. Graessle, therefore, cannot be held individually liable, and Defendants' Motion as to the claims against him is **GRANTED**.

### 2.) **John Taulien**

Taulien was Plaintiff's immediate supervisor and the individual who was responsible for monitoring Plaintiff's performance. Several material issues of material fact remain for resolution by the trier of fact as to Taulien's involvement in the alleged adverse employment actions and whether these decisions were illegally motivated by age-based discrimination.

The same conclusion does not apply, however, with respect to Plaintiff's claim that Defendants retaliated against him for filing the EEOC claim. Plaintiff has provided no evidence that Taulien was aware at any time during Plaintiff's employment that Plaintiff had filed an EEOC complaint. Under these circumstances, Taulien cannot be held liable for retaliating against Plaintiff for engaging in protected activity because Taulien did not know that Plaintiff had done so. *Scott v. Eastman Chemical Co.*, 2008 WL 1808549, 275 Fed. Appx. 466 (6th Cir. April 22,

-19-

2008)(unreported). Accordingly, Defendants' Motion is **DENIED** as to Taulien.

### 3.) <u>Jeff Schneider</u>

Genuine issues of material fact preclude summary judgment in favor of Schneider on Plaintiff's state-law age discrimination and retaliation claims. A jury must determine the facts related to Schneider's conduct and evaluate his motives in ordering Plaintiff's discipline and discharge. Defendants' Motion is, therefore, **DENIED** as to Schneider.

### D.    **Limitations on Plaintiff's Damages Based on After-Acquired Evidence**

Defendants contend that Plaintiff's damages, if any, are limited because he engaged in conduct for which he would have discharged had Thermo known of the behavior during Plaintiff's employment. Defendants seek partial summary judgment on the issue of damages and an order that Plaintiff's recovery is limited to the period of his termination to his deposition on November 26, 2007, when they learned that Plaintiff had tape-recorded conversations with his supervisors.

In *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 354 (1995), the question before the Supreme Court was "whether an employee discharged in violation of the Age Discrimination in Employment Act of 1967 is barred from all relief when, after her discharge, the employer discovers evidence of wrongdoing that, in any event, would have led to the employee's termination on lawful and legitimate grounds." The Court held that such after-acquired evidence is not a complete bar to ADEA recovery. Nonetheless, after-acquired evidence of the employee's wrongdoing must be taken into account in fashioning a remedy: neither reinstatement nor frontpay generally is appropriate, and backpay should be limited to the point when the employer discovered wrongdoing. *Id.* at 361-62. In all events, the Court concluded that the proper boundaries of remedial relief in cases of this type must be addressed individually because "the factual

-20-

permutations and the equitable considerations they raise will vary from case to case." *Id*. at 361.

An employer seeking to rely upon after-acquired evidence of wrongdoing "must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *McKennon*, 513 U.S. at 362-63. In this case, the Court concludes that the trier of fact must determine whether Thermo would have terminated Plaintiff for tape-recording conversations with his supervisors. Defendants offer the deposition testimony of Lisa Dubey in which she avers that, in her opinion, tape recording conversations would violate the company's Code of Conduct to act honestly and in good faith.[13] Contrary to Defendants' assertions, Dubey never testified that Plaintiff would have been terminated for this alleged violation of the company's work policy.

Defendants also suggest that Schneider's testimony supports their position. Schneider testified that Thermo terminated another employee for a violation of the company's Code of Conduct. (Schneider Dep., at 375.) In context, Schneider testified that he was involved in several terminations, and mentioned that one involved an employee who eavesdropped on a management meeting, published confidential information, and lied about knowledge of it, in violation of the company's Code of Conduct. Here, there is no evidence that Plaintiff published information contained on the tape recordings, other than to his counsel and within the confines of this litigation, subject to a protective order. Moreover, Schneider was not asked, and did not testify that Plaintiff would have been terminated for his conduct.

---

[13]     Defendants have not pointed to a company policy that prohibits tape recording of conversations. Ohio law permits such recordings when it is done by one of the parties to the conversation. Ohio Rev. Code § 2933.52(B)(4).

-21-

Accordingly, Defendants' Motion is **DENIED** in this regard, subject to further factual findings by the jury.

**E.    Count 2 - Constitutionality of Ohio Rev. Code § 2315.18**

In his Amended Complaint, Plaintiff alleged that the limitations on noneconomic and punitive damages set forth in Ohio Rev. Code § 2315.18 are unconstitutional. Defendants contend in their Motion that the Supreme Court of Ohio rejected this argument and found that the limitations on damages found in the statute are "constitutional on their face." *Arbino v. Johnson & Johnson*, 116 Ohio St. 3d 468 (Ohio 2007). Defendants contend, therefore, that Count 2 is moot.

Plaintiff does not oppose or otherwise address Defendants' Motion as to Count 2 of the Amended Complaint in his Memorandum in Opposition. Having not addressed the argument in his responding memoranda, the Court concludes that Plaintiff waives his opposition to the Motion with respect to Count 2.

**IV.**

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. #33) is **GRANTED IN PART AND DENIED IN PART**. The **FINAL PRETRIAL CONFERENCE** is hereby **RESCHEDULED** for **SEPTEMBER 16, 2008 at 12:30 P.M**. The **TRIAL** shall commence on **SEPTEMBER 29, 2008 at 9:00 A.M**.

**IT IS SO ORDERED.**

9-4-2008
**DATED**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

-22-